398 F.2d 398
 Clemon BARLOW et al., Appellants,
v.
B. L. COLLINS, State Executive Director of the Alabama Agricultural Stabilization and Conservation Service; Horace Godfrey, Administrator of the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture; and Orville L. Freeman, Secretary of the United States Department of Agriculture, Appellees.
 No. 24886.
 United States Court of Appeals Fifth Circuit.
 July 16, 1968.
 
 Alvin J. Bronstein, Jackson, Miss., Donald A. Jelinek, Selma, Ala., Armand Derfner, Jackson, Miss., Howard Thorkelson, George Cooper, New York City, Charles S. Conley, Montgomery, Ala., Richard B. Sobol, New Orleans, La., of counsel, for appellants.
 W. McLean Pitts, Selma, Ala., Alan S. Rosenthal, Norman Knopf, Washington, D. C., Ben Hardeman, Montgomery, Ala., Edwin L. Weisl, Jr., Asst. Atty. Gen., Ben Hardeman, U. S. Atty., Alan S. Rosenthal, Norman Knopf, Attys., Dept. of Justice, Washington, D. C., for appellees.
 Before TUTTLE and DYER, Circuit Judges, and MEHRTENS, District Judge.
 DYER, Circuit Judge:
 
 
 1
 Appellants, tenant farmers receiving benefits under the Food and Agriculture Act of 1965, 7 U.S.C.A. § 1444, appeal from the District Court's decree granting the motion of defendant-appellees Collins, Godfrey and Freeman to dismiss appellant's complaint. The District Court held that appellants did not have standing to challenge an amendment to regulations issued by the Secretary of Agriculture defining permissible assignments by tenant farmers of land diversion payments made to them under the Act. We agree and affirm.
 
 
 2
 The assignment of diversion payments is governed by the provisions of 16 U.S. C.A. § 590h(g). 7 U.S.C.A. § 1444(d) (13). At the time the regulation in question was amended section 590h(g) provided, in pertinent part, that a farmer could assign his payments "as security for cash or advances to finance making a crop." From 1938 to 1966 the Secretary of Agriculture's policy and regulations excluded from the term "making a crop" cash or commodity rent for a farm. 20 Fed.Reg. 6511 (1955). In February, 1966, the regulation was amended to allow a tenant to assign his payments to secure rent for his farm. 31 Fed.Reg. 2815 (Feb. 17, 1966). Appellants' complaint asserts that they "are suffering irreparable injury" because, under the amended regulation, they "were each year required [by their landlord] to execute a rent note as security for the cash rent of this land" and thus were deprived of the bargaining power the payment had given with various merchants and suppliers in previous years. They argue that the regulation in its present form violates the intent of Congress and constitutes illegal action by the Secretary.
 
 
 3
 In the case of REA v. Central La. Elec. Co., 5 Cir. 1966, 354 F.2d 859, cert. denied, 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54, this Court set forth specific criteria for determining whether appellants have standing to challenge an administrative regulation.[1] These criteria are based upon and designed to implement the basic premise of section 10(a) of the Administrative Procedure Act, 5 U.S.C.A. § 702.[2] Thus, in the absence of an express or implied statutory grant of standing, mere economic harm to an appellant "made possible by government action (even if allegedly illegal) does not give standing to sue to restrain such action." REA v. Central La. Elec. Co., supra, 354 F.2d at 863, and authorities cited therein.
 
 
 4
 When the Fifth Amendment is invoked, as it is here, it must be determined whether appellants have established "any legally protected property right," Id., i. e., any legal right to be restrained from assigning their diversion payments to their landlord. See Braude v. Wirtz, 9 Cir. 1965, 350 F.2d 702, 707; Pennsylvania R. R. v. Dillon, 1964, 118 U.S.App.D.C. 257, 335 F.2d 292, 294, cert. denied sub nom., American-Hawaiian S.S. Co. v. Dillon, 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543. Appellants contend that they have such a right because the statute in question was enacted for their benefit. However, a policy of protecting a class of persons does not, without more, grant a legal right to those persons to enforce the policy. REA v. Northern States Power Co., 8 Cir. 1967, 373 F.2d 686, 695. Furthermore, "allegation of a legally protected right is a constitutional predicate of standing to attack governmental action." Pennsylvania R. R. v. Dillon, supra, 335 F.2d at 294. (Emphasis added.) We have found no such allegation in appellants' complaint.
 
 
 5
 Here, as in REA v. Central La. Elec. Co., a long standing administrative policy has been reversed. However, there is nothing in this record to show a statute or contract between the government and appellants granting them a property right in being restrained from assigning their payments to their landlord. Appellants attempt to show that the statutory phrase "making a crop" precludes assignment for land rent because it is a technical phrase meaning "to prepare a crop for use or storage at the last stage of development." Appellants' Brief, p. 24 (citing Oxford English Dictionary M-64 (1908)). We are unwilling to accept such technical niceties, especially in light of a recent amendment to the statute which added, after the phrase "to finance making a crop" the words "handling or marketing an agricultural commodity, or performing a conservation practice." 16 U.S. C.A. § 590h(g) (Supp.1967).[3] The substance of the amendment clearly evinces a Congressional willingness to expand areas of permissible assignment. Furthermore, over the years the Secretary has amended the assignment regulation to allow assignment as security for such items as food and clothing for the tenant and his family when in the Secretary's expert judgment practical considerations have warranted such changes. Appellants challenge only the farm rental portion of the regulation and have failed to show any statutory or contractual right to challenge that provision of the regulation allowing them to assign for rent on the land upon which their crops are grown while taking advantage of the same regulation to assign for food, clothing, etc. to be used while that crop is growing.
 
 
 6
 Appellants' final argument, that by the adoption of 16 U.S.C.A. § 590h(g) as part of the Food and Agriculture Act of 1965, Congress approved and adopted the administrative construction of that statute so that the regulation cannot now be changed by administrative action, is totally without merit. The regulation was amended in February, 1966. In November, 1966, some ten months later, Congress reconsidered and amended section 590h(g). Thus, if any administrative construction of the statute could be said to have been approved by Congress, it would be the interpretation then in effect, i. e., that diversion payments may be assigned as security for farm rent.
 
 
 7
 The remaining criteria set forth in REA v. Central La. Elec. Co., supra, may be summarized as follows: Have appellants shown that the case presents more than mere economic harm made possible by government action; and, if not, that Congress expressly or impliedly in the Act gave them standing to challenge the Secretary's action, or that it gave the Courts jurisdiction to review that action? Without reiterating the facts developed above, appellants have shown only that their landlord has, under the amended regulation, demanded that they assign their diversion payments over to him as security for the rent of the farmland, and that this has deprived them of economic bargaining power. This is nothing more than an economic consequence permitted, but not required, by government action. Appellants have not shown us, nor have we found, any provision of the Food and Agriculture Act of 1965[4] which either expressly or impliedly gives appellants standing to challenge this administrative regulation or gives the Courts authority to review such administrative action. To the contrary, the Act is replete with references to the Secretary's power to implement its provisions and evinces Congressional confidence in and reliance on the Secretary's expertise. As we concluded in REA v. Central La. Elec. Co., supra at 865, this case is one where however outrageous or unfair appellants consider the effects of this regulation, their remedy lies not in the Courts but in Congress.
 
 
 8
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Court stated the criteria in the form of four questions:
 
 
 [1]
 Does this case raise anything more than "mere economic competition made possible by governmental action"?
 
 
 [2]
 If not, has Congress, expressly or by implication, given [plaintiff-] appellees standing to sue under the terms of the Rural Electrification Act of 1936, 49 Stat. 1363, 7 U.S.C.A. § 901 et seq.?
 
 
 [3]
 Has Congress, expressly or by implication, conferred jurisdiction on the Courts to review the granting or denial of a proposed REA loan?
 In view of the effort to invoke Amendment 5 of the Constitution, we add a fourth question:
 Have appellees shown any legally protected property right to be free of competition from the prospective borrower?
 REA v. Central La. Elec. Co., supra, 354 F.2d at 863.
 
 
 [2]
 That section reads:
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.
 
 
 [3]
 The legislative history sheds no light on the reasons for this amendment. See 3 U.S.Code Cong. & Admin.News, pp. 3819-3821 (1966)
 
 
 [4]
 The provisions of this Act are to be found in 7 U.S.C.A. §§ 608c, 1301, 1314b, 1332-1335, 1339, 1339a, 1339c, 1340, 1346, 1348, 1350, 1353, 1374, 1379b-1379i, 1427, 1444, 1445a, 1782; 16 U.S.C.A. § 590p
 
 
 TUTTLE, Circuit Judge (dissenting):
 
 9
 With deference I dissent from the opinion of the court. The federal statute which provides for the payment of these cash benefits to tenants and sharecroppers provides expressly that "in carrying out the provisions of this section, the Secretary shall, as far as practicable, protect the interests of tenants and sharecroppers." 16 U.S.C.A. § 590h(b). The provision which authorizes the assignment by a tenant is limited by the terms of the statute to assignments "as security for cash or advances to finance making a crop." The authority of the Secretary to issue regulations cannot authorize the issuing of a regulation that permits an assignment for something other than "as security for cash or advances to finance making a crop." It is perfectly plain to me that the Secretary, for thirty years, correctly construed the language of that section to prohibit an assignment by a tenant for rent for the land upon which he would then undertake to "make a crop." It seems equally clear to me that the new regulation which authorizes an assignment as security for the payment of rent of the land goes beyond the statutory authorization because it is not an assignment as security for either "cash or an advance," nor, in my opinion, is it an assignment "to finance making a crop." The making of a crop is something that takes place on the land once acquired. I would construe this language as a matter of law as to exclude the cost of obtaining the land upon which the crop is to be made.
 
 
 10
 I would have no difficulty in concluding that the authorization under this statute to a tenant or sharecropper to make an assignment for the purpose of obtaining seed and fertilizer necessary to make a crop is a special benefit conferred on him by Congress, particularly in light of the express concern demonstrated by Congress by including the language quoted above in subparagraph (b) of the Act. Nor would I have any difficulty in understanding the special benefit which Congress meant to confer upon a tenant by combining an authorization to make a limited assignment for the "making of a crop," with a clearly implied denial of the right to make the assignment for the payment of rent for the purpose of acquiring the land upon which he was to operate. This meets the test of standing to sue. I would base this conclusion on what this court has said in Rural Electrification Administration v. Central Louisiana Electric Co., 5 Cir., 354 F.2d 859, where, at page 863, the court discussed the question of standing. It suggested that standing to sue would be found if Congress "expressly or by implication [has] given [the parties] standing to sue under the terms of the" particular statute involved. I think the right given to the tenants in this statute to have the privilege of making assignments for the cash and other advances used in making a crop, but restricting their right to assign for any other purpose, is a right that is peculiar to such tenants as a class and for their special benefit. I, therefore, think that the Congress has impliedly granted them standing to sue. Moreover, I think the reasoning of the Supreme Court, in its opinion in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed. 2d 681, makes it clear that where there is no other way to obtain judicial review of administrative action that infringes a right granted by Congress, there is nothing in the Administrative Procedure Act that would prohibit judicial review of such administrative action.
 
 
 11
 I conclude, therefore, both that there was standing to sue, and that, on the merits, the Secretary's regulation broadening the language of the statute, as I view it, to include the making of an assignment for rents to landlords was invalid as going beyond the statute.
 
 
 12
 I, therefore, respectfully dissent from the opinion of the Court.