**HARRY H. PRICE & SON, INC.,** and Harold Price and Kyle Muennick, formerly a partnership trading under the name Harry H. Price & Son

v.

Honorable Clifford **HARDIN,** Secretary of Agriculture of the United States of America.

Civ. A. No. 3–3119.

United States District Court
N. D. Texas,
Dallas Division.

May 19, 1969.

Emil Corenbleth, Lawrence Fischman, Dallas, Tex., for plaintiff.

Kenneth J. Mighell, Asst. U. S. Atty., Eldon B. Mahon, U. S. Atty., Dallas, Tex., John C. Chernauskas, J. Charles Krause, Attys., U. S. Dept. of Agriculture, for defendant.

HUGHES, District Judge.

Plaintiff, Harold H. Price & Son, Inc., hereinafter called Price, sued the Secretary of Agriculture, hereinafter called Secretary, praying for the issuance of a temporary restraining order and a permanent injunction to restrain the Secretary from enforcing certain import regulations on the shipment of tomatoes into the United States.

The Secretary filed a motion to dismiss on the ground that Price lacked standing to sue and that the complaint failed to state a cause of action upon which relief could be granted. This Court agrees with both contentions of the Secretary.

Price is a wholesaler and re-packer of tomatoes, the majority of which he buys from importers of tomatoes from Mexico. He complains primarily of two regulations (which he contends are orders) promulgated by the Secretary, effective January 3, 1969, and April 14, 1969, and two import restrictions issued at the same time as the two regulations. These regulations and import restrictions prohibited the handling of tomatoes of a certain size and maturity. Price alleges the effect of the regulations and import restrictions is to restrict severely the importation of vine ripened tomatoes from Mexico.

It is Price's contention that the regulations of January 3, 1969 and April 14, 1969 and the import restrictions issued at the same time are invalid because the Secretary failed to give notice and hold hearings prior to promulgation.

Price further contends that he has invested heavily in supplies and materials which he will be unable to use unless the Secretary is restrained from the enforcement of the regulations heretofore referred to. He contends therefore that he will suffer irreparable injury.

A temporary restraining order was issued by this Court and a hearing had on the application for preliminary injunction. The Secretary filed a motion to dismiss and this motion was sustained after hearing on the preliminary injunc-

tion but prior to action on the application for preliminary injunction.

The policy of the Agricultural Adjustment Act is:

> "to establish and maintain such orderly marketing conditions for agricultural commodities in interstate commerce as will establish * * * parity prices [to farmers]" * * * [and] "to protect the interest of the consumer." 7 U.S.C. § 602

An understanding of the contentions of the parties requires a discussion of the rules and regulations issued by the Secretary in connection with the sale and importation of tomatoes.

7 U.S.C. § 608c authorizes the Secretary to issue, and from time to time amend orders applicable to processors, or "associations of producers, and others engaged in the handling of [certain] agricultural commodities."

In 1955 the Secretary issued a marketing order (7 C.F.R. 966.1–150 as amended) providing methods for limitations on the handling of Florida tomatoes.[1] Section 966.52 of the order provided for the issuance of regulations which "would tend to effectuate the declared policy of the act."

An amended order, effective July 12, 1968, stated that such regulations may:

> (a) Limit, in any or all portions of the production area, the handling of particular grades, sizes, qualities (including maturity as a factor of grade or quality), or packs of any or all varieties of tomatoes, * * *.

Both the order and the amendment were issued after notices and the opportunity for hearings as required by 7 U.S.C. § 608c(3).

Three regulations have been issued pursuant to Section 966.52 of the Marketing Order tending "to effectuate the declared policy of the act." The first, effective November 15, 1968, was issued after notice was given; the later two, effective January 3, 1969, and April 14, 1969, respectively, were issued without such notice under the authority of 5 U.S.C. § 553 (Administrative Procedure Act).[2]

The Secretary included in both of the challenged regulations the following statement:

> "It is hereby found that it is impracticable and contrary to the public interest to give preliminary notice, or engage in public rule making procedure, and that good cause exists for not postponing the effective date of this amendment * * *."

Pursuant to 7 U.S.C. § 608e–1[3] the Secretary then issued similar import restrictions. The regulations effective without notice on January 3, 1969, and April 14, 1969, and the parallel import restrictions are challenged by Price as having been irregularly issued.

■ The Secretary complied with the provisions of 7 U.S.C. § 608c in the issuance of the marketing order and its amendment of July 12, 1968, and in the issuance of regulations pursuant to Section 966.52 of the Marketing Order "to effectuate the declared policy of the

---

1. 7 U.S.C. § 608c(6) (A) authorizes orders "limiting or providing methods for the limitation * * * of any grade, size or quality" of specified agricultural commodities, including tomatoes.

2. Section 553(b) provides in part: "Except when notice or hearing is required by statute this subsection [requiring notice] does not apply * * * (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."

3. 7 U.S.C. § 608e–1 provides in part: "* * * whenever a marketing order * * * contains any terms * * * regulating the grade, size, quality, or maturity of tomatoes * * * produced in the United States the importation into the United States of any such commodity * * * during the period of time such order is in effect shall be prohibited unless it complies with the grade, size, quality, and maturity provisions of such order or comparable restrictions promulgated hereunder * * *."

act" and in the issuance of import restrictions. Price's contention that the regulations of January 3, 1969, and April 14, 1969, are orders is without merit.

■ It is contended by Price that since the "regulation" effective November 15, 1968, was issued only after notice the Secretary is issuing orders which require notice. But this is not so. The Secretary is required to give notice of all proposed regulations unless the particular regulation and the exigencies of the then existing situation make notice "impracticable, unnecessary or contrary to the public interest." As heretofore pointed out, the Secretary made such findings as to the challenged regulations which are sufficient to comply with the statute regarding notice.

■ Price contends further that Section 608e–1 of 7 U.S.C. requires parallel import restrictions to be entered only when marketing orders are issued and not when the Secretary has merely promulgated regulations. This contention, however, is not valid. While the Act does provide for the issuance of import restrictions whenever a marketing order has been entered, it goes on to state that "during the period of time such order is in effect (such product) shall be prohibited unless it complies with the grade, size, quality and maturity provision of such order or *comparable restrictions* promulgated hereunder." (Emphasis added). Moreover the contention urged by Price appears contrary to the purpose of the Agricultural Adjustment Act of which Section 608e–1 is a part. This section further provides for the Secretary to promulgate such rules and regulations deemed necessary to carry out its provisions.

By requiring the imposition of import restrictions when marketing orders or "comparable restrictions" were entered controlling domestic commodities, Congress developed a scheme by which the Secretary was required to regulate imports whenever domestic production was regulated. This the Secretary has done by issuing the parallel import restrictions complained of.

Price also seeks to have this Court issue a writ of mandamus requiring the Secretary to grant him and others so situated a hearing to determine whether they are entitled to an exemption from the provisions of the import regulations.

■ The marketing order regulating the Florida tomato growers does provide for exemption relief for hard-pressed producers regulated by the marketing order. Clearly the exemption provided could only apply to people regulated thereunder. Price does not fall within that class so there is nothing from which he could be exempted. Furthermore the section concerning import restrictions does not require hearings for any such hardship exemptions asserted by Price. That section does permit the Secretary to find that parallel restrictions on imported commodities are not practicable because of variations in characteristics between the imported and domestic commodities and to issue such classifications as he finds "will be equivalent or comparable to those imposed upon the domestic commodity under such order." The Secretary has not so found and this provision offers Price no relief.

The first ground for dismissal urged by the Secretary is that Price lacks standing to bring the action.

As previously stated Section 608c(1) of Title 7 U.S.C. authorizes the Secretary to issue "orders applicable to processors, associations of producers, and others engaged in the handling of any agricultural commodity * * *." Price is a repacker and wholesaler of tomatoes. He has admitted in his brief that he is not a grower or handler nor is he an importer. Thus he is not subject to the regulations or to the import restrictions relating to the size and maturity of tomatoes.

It is Price's contention, however, that he has standing under 5 U.S.C. § 702

(formerly section 10(a) of the Administrative Procedure Act), which provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

In discussing standing the Supreme Court in the case of Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 had this to say with respect to the determination of standing:

"The various rules of standing applied by federal courts have not been developed in the abstract. Rather they have been fashioned with specific reference to the status asserted by the party whose standing is challenged and to the type of question he wishes to have adjudicated." Id. at 101, 88 S.Ct. at 1953.

"[W]hen standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." Id. at 99–100, 88 S.Ct. at 1952.

In the case before this Court it is clear that under the Agricultural Adjustment Act Price is not such a person as has been given the right to question an order or regulation.

Price's primary complaint is that he has, in reliance on earlier restrictions, purchased plastic cartons and wrappings for tomatoes too small to be handled under present regulations.

The injury complained of is economic. The Fifth Circuit has recently passed on two cases in which it has been held that economic injury is not sufficient to give standing.

In the case of REA v. Central Louisiana Electric Company, Inc., 354 F.2d 859 (5th Cir. 1966), cert. denied 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54, the REA approved a loan to Louisiana Electric Cooperative, Inc. to construct a power plant and power line. Central Louisiana Electric Company, Inc. sued REA to enjoin the loan as it would infringe on Central's business. In holding that Central had no standing to sue the Court declared that "mere economic competition * * * made possible by government actions (even if allegedly illegal) does not give standing to sue to restrain such action."

In the case of Barlow v. Collins, 398 F.2d 398 (5th Cir. 1968), regulations issued by the Secretary of Agriculture were challenged by tenant farmers who contended they were adversely affected. Again the Fifth Circuit held that mere economic harm "in the absence of an express or implied statutory grant of standing" was not sufficient to give standing. The Court concluded by saying "this case is one where however outrageous or unfair appellants consider the effects of this regulation, their remedy lies not in the Courts but in Congress."

Price cites this Court to the recent case of Saxon v. Georgia Association of Independent Insurance Agents, Inc., 399 F.2d 1010 (5th Cir. 1968). This consisted of two actions brought by licensed independent insurance agents for declaratory judgment and injunction against a national bank's operation of an insurance agency business in places having populations exceeding 500 persons. The Court held such operation was illegal and under such circumstances the insurance agents had standing to sue. In differentiating it from REA v. Central Electric Company, supra, and other similar power company cases the Court declared at p. 1018:

"That case [REA] was not a case of this kind and this case is not a case of that kind. The case here decided involved neither federally sponsored projects nor federally sponsored urban renewal projects. * * * Instead these cases involve unlawful competition by a national bank from which the power to compete has been withheld by Congress. Moreover the plaintiffs in these cases had a 'statutory aid to standing'."

Other cases cited by Price are likewise distinguishable. In Flast v. Cohen, su-

*pra*, taxpayers contested the disbursement of federal funds under the Elementary and Secondary Education Act of 1965 to finance instruction and the purchase of educational materials for use in religious and sectarian schools, contending that the Act violated the First Amendment. In holding that the taxpayer had status the Court declared:

"Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. When both nexuses are established, the litigant will have shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party to invoke a federal court's jurisdiction." Id. at 102–103, 88 S.Ct. at 1954.

In Stark v. Wickard, 321 U.S. 288, at 304, 64 S.Ct. 559 at 568, 88 L.Ed. 733 (1943) the Court stated with reference to standing:

"It is only when a complainant possesses something more than a general interest in the proper execution of the laws that he is in a position to secure judicial intervention. His interest must rise to the dignity of an interest personal to him and not possessed by the people generally."

■■ This review of cases involving standing clearly shows that plaintiff does not have standing under the Administrative Procedure Act. The regulations involved herein do not regulate Price. They apply to producers, handlers and importers. He is a repacker and wholesaler. At most they have an adverse effect on his business. Such effect, if it exists, is not sufficient to confer standing under the clause in 5 U.S.C. § 702 reading "adversely affected or ag-grieved by agency action within the meaning of a relevant statute." As held in the cases cited this clause refers only to situations in which a particular statute expressly confers standing on a person who is adversely affected or aggrieved by agency action under that statute.

Accordingly, it is clear that Price lacks standing to sue in this action.

■ In conclusion the complaint and evidence at the hearing on the preliminary injunction show that Price will not suffer any irreparable injury. His only damage is that he has purchased supplies, mostly cartons, which he cannot use because the size of the tomatoes has been limited. He contends that these were purchased in reliance on the regulation issued in November, 1968. If he did make such purchases, he did so at his own peril and after express notice that regulations do not necessarily remain unchanged. The import regulation (attached as Ex. C to Price's own complaint expressly warned all interested parties that "The regulation is subject to amendment with adequate notice[4] as domestic regulations are changed." In addition a reading of Sec. 608e–1 reveals that rules and regulations may be issued whenever required to carry out the provisions of the act. The alleged investment in reliance or continuance of the initial import regulation cannot be relied on by Price.

Moreover the extent of the loss would appear to be minimal. While Price may not now be able to use his supplies, according to the affidavit of Paul A. Nicholson, Deputy Director, Fruit and Vegetable Division, Consumer and Marketing Service, United States Department of Agriculture, such containers may be of use at a later time of the year when tomatoes from various sources throughout the United States will be freely available.

---

**4.** The notice referred to is the notice required by 608e–1, i. e. not less than 3 days notice of effective date and in the case of tomatoes enough time to ship them from point of origin to point of entry.

This Court finds no irreparable injury resulting from the marketing regulations and import restrictions involved in this case.

For the reasons stated the motion to dismiss is sustained.