**HARRY H. PRICE & SONS, INC., et al., Plaintiffs-Appellants,**

v.

**Clifford M. HARDIN, Secretary of the Department of Agriculture of the United States, Defendant-Appellee.**

No. 27965.

United States Court of Appeals, Fifth Circuit.

April 27, 1970.

Rehearing Denied June 4, 1970.

---

Lawrence Fischman, Emil Corenbleth, Dallas, Tex., for plaintiffs-appellants.

Eldon B. Mahon, U. S. Atty., Dallas, Tex., Norman Knopf, Alan S. Rosenthal, Attys., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before JONES, BELL and GODBOLD, Circuit Judges.

JONES, Circuit Judge:

The appellant, Harry H. Price & Sons, Inc., is a tomato repacker and wholesaler whose principal place of business is located in Dallas, Texas. It purchases the majority of its tomatoes from importers who receive vine-ripened tomatoes from Mexico. The initial question before this Court is whether the appellant has standing to challenge the validity of certain administrative orders or regulations, issued by the Secretary of Agri-

culture pursuant to the Agricultural Marketing Agreement Act,[1] which, it is alleged, have severely restricted the importation of vine-ripened tomatoes from Mexico and thus caused substantial injury to the appellant's business.

The Agricultural Marketing Agreement Act provides a comprehensive scheme for the regulation of agricultural commodities, including tomatoes, which move in interstate commerce. The declared policy of the Act is to protect the interests of the farmer and consumer through the establishment of "orderly marketing conditions."[2] To carry out the policy of the Act, the Secretary of Agriculture is given the power to promulgate marketing orders applicable to "processors, associations of producers, and others engaged in the handling" of those agricultural commodities covered by the Act.[3] The orders may contain terms relating to grade, size and quality standards and other such terms as may be necessary to effectuate the provisions of such order.[4] The Act also contains provisions regarding procedures for adopting marketing orders, including formal notice and hearing, and grants review of a marketing order to any "handler subject to an order * * *."[5] The effect of a marketing order is not limited to those commodities produced domestically, for Section 608e–1 of the Act provides that whenever a marketing order contains terms regulating the grade, size, quality, or maturity of a regulated commodity, the importation of that commodity is prohibited unless it complies with the provisions of such order or other comparable restriction.

Pursuant to this statutory authority, the Secretary, in 1955, issued an order regulating the handling of tomatoes grown in Florida.[6] Effective July 12, 1968, this order was amended to author-

---

1. 7 U.S.C.A. § 601 et seq. (1964).

2. 7 U.S.C.A. § 602 (1964).

3. 7 U.S.C.A. § 608c(1) (1964).

4. 7 U.S.C.A. § 608c(6) (A), (7) (D) (1964).

5. See 7 U.S.C.A. § 608c(3), (4), (15) and (17) (1964).

6. 7 C.F.R. 966.1–.150 (as amended 1961).

ize regulations limiting "the handling of particular grades, sizes, qualities (including maturity as a factor of grade or quality), or packs of any or all varieties of tomatoes, during any period." Section 966.52, 33 Fed.Reg. 8585 (1968). As amended, the order limited the definition of "handler" to those persons who "sell, transport or in any other way to place fresh tomatoes, produced in the production area [certain Florida counties], in the current of commerce between the regulation area [Florida] and any point outside thereof in the United States, Canada, or Mexico." 33 Fed. Reg. 8585–86 (1968). Both the order and its amendment were issued after notice and the opportunity for a hearing as required by 7 U.S.C.A. § 608c(3).

Three regulations were issued by the Secretary pursuant to Section 966.52 of the amended 1955 marketing order. The first of these, issued after 30-day notice was given, became effective November 15, 1968, and was to be in effect until July 31, 1969.[7] It limited the handling of tomatoes to those over $2\frac{1}{4}$ inches in diameter. A companion tomato import restriction became effective on the same date, and the restriction noted that it was subject to amendment on three days' notice as domestic regulations changed.[8] Two other regulations, effective January 8, 1969 and April 14, 1969,[9] were issued by the Secretary without notice under the authority of the emergency rule-making provisions of the Administrative Procedure Act.[10] These regulations took an approach not theretofore used in requiring a degree of maturity and size as a test for availability for shipment. Thus, mature green tomatoes were shipable[11] in January and April if they were larger than $2\frac{8}{32}$ inches and $2\frac{17}{32}$ inches respectively, whereas tomatoes more advanced in maturity, such as vine-ripened reds, could be shipped in January and April only if they were larger than $2\frac{11}{32}$ and $2\frac{20}{32}$ inches respectively.[12] As these regulations became effective, import restrictions were adjusted accordingly.[13]

In an action brought to enjoin the Secretary from enforcing the January and April 1969 import restrictions, the appellant challenged the validity of the "regulations" upon which the import restrictions were based. In its complaint, the appellant alleged that "because of the limited seasonal nature of the commodity in question, and because of the heavy investment in supplies and materials made * * * all of which will be totally wasted, plaintiff will suffer irreparable injury * * *." The Secretary of Agriculture filed a motion to dismiss the complaint on the grounds that the appellant had no standing to bring and maintain the action and that the complaint failed to state a cause of action. No answer was filed. The case was set for hearing on an application for an injunction pendente lite. The court suggested and the parties agreed that the hearing should be regarded as a final hearing on the merits. Many contentions were made in the complaint, including claims that the Act is unconsti-

---

7. 33 Fed.Reg. 16010 (1968).

8. 33 Fed.Reg. 16110 (1968).

9. 34 Fed.Reg. 128 (1969); 34 Fed.Reg. 6326 (1969).

10. "Except when notice or hearing is required by statute,
   this subsection [requiring notice] does not apply—(b) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C.A. § 553 (b) (1967).

11. This word can be found in dictionaries as an obsolete term meaning "navigable." We are introduced to it by the brief of the Secretary of Agriculture who apparently uses it to mean able to be shipped, or available for shipment.

12. These regulations, which used maturity as a standard, were issued pursuant to the amended marketing order of the Secretary which became effective July 12, 1968. See text supra and Section 966.52, 33 Fed.Reg. 8585 (1968).

13. 34 Fed.Reg. 128 (1969); 34 Fed.Reg. 6327 (1969).

tutional, which contention is no longer being relied upon; the January and April 1969 "regulations" were in fact amendments to a marketing order and are thus invalid for lack of notice and opportunity to be heard; the Secretary exceeded his authority in issuing regulations; the Secretary could not use maturity as a test for the handling of tomatoes; the Secretary failed to discharge a statutory duty to give proper notice of a change in import restrictions to appellant and others similarly situated; the regulations were capricious and arbitrary and hence void and unenforceable; and, the appellant was wrongfully denied a hearing on its claim for exemption from the application of the import restrictions.

The district court sustained the motion to dismiss on both of the stated grounds, holding that the appellant had no standing to bring and maintain the suit and holding that the complaint did not state a cause of action.[14] The district court also considered some but not all of the appellant's contentions on the merits and resolved these issues against it.

The district court, in its determination that the appellant had no standing to bring and maintain this action, relied, in part, upon the decisions in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L. Ed.2d 947, and Barlow v. Collins, 5th Cir. 1968, 398 F.2d 398.[15] We are not in disagreement with the conclusions of the district court as to standing to the extent that they were based upon statements found in reports of the decided cases at the time the district court judgment was entered. However, subsequent to the entry of the district court judgment, the Supreme Court has decided two cases in which it handed down opinions that render the conclusion of the

district court erroneous. Data Processing v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L. Ed.2d 192 (1970). In the *Data Processing* case the *Flast* decision is construed and by construction given a different meaning than that which the district court gave it. The *Barlow* case from this Circuit was reversed. The rule now applicable seems to be that if the applicant for relief alleges that the "challenged action has caused him injury in fact, economic or otherwise," then a determination should be made as to "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question," and if it be so found, the plaintiff has standing. Data Processing v. Camp, supra.

■ It might be suggested that there are principles of law set forth in decided cases which are more easily understood and more readily applied than the above test of standing. In the case before us the appellant's complaint has shown economic injury. The appellant has certainly argued that it is within "the zone of interests to be protected or regulated." It does not necessarily follow that because it has so argued that it is "arguably" within such zone of interests but we think the complaint demonstrates that the appellant has met the test of standing of the *Data Processing* case. It has been a handler of tomatoes of the kind and size the marketing of which is indirectly affected by the orders and regulations, and it was in the marketing chain of such tomatoes between producer and consumer. The declared policy of the Act[16] discloses a zone

14. Harry H. Price & Son, Inc. v. Hardin, N.D.Tex.1969, 299 F.Supp. 557.

15. The court held that the Administrative Procedure Act, 5 U.S.C.A. § 702, did not confer standing.

16. "It is declared to be the policy of Congress—

"(1) Through the exercise of the powers conferred upon the Secretary of Agriculture under this chapter, to establish and maintain such orderly marketing conditions for agricultural commodities in interstate commerce as will establish, as the prices to farmers, parity

of interests and the appellant is, arguably, within that zone of interests. It follows that it has standing to bring and maintain the action.

The district court having decided that the appellant did not have standing to bring and maintain the action might have omitted any consideration of the merits of the appellant's claim. If there is no standing on the part of a plaintiff, the court has no jurisdiction over the merits of the claim asserted. Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404; Flast v. Cohen, supra. However, as has been noted, the district court stated that the complaint failed to state a claim upon which relief could be granted and in its opinion apparently held that this was also a ground for dismissal.

Since it is here held that the appellant has standing to bring and maintain the action, we consider the district court's apparent determination on the merits. The complaint was not free from imperfections but its defects were not such as required the granting, without leave to amend, of a motion to dismiss for failure to state a cause of action. Before final hearing an answer would be appropriate. The uncontradicted evidence of the appellant that it had sustained business losses was not the subject of notice or comment in the district court's opinion. This evidence, although not detailed or documented, was such as might have been considered in determining whether an irreparable injury had been shown. The district court observed that the only loss shown by appellant resulted from its inability to use some packaging materials it had purchased. The district court found that this was not an irreparable injury and so concluded that no irreparable injury had been shown.

It seems probable that the principal basis for the district court's decision was its determination that the appellant was without standing. Under such circumstances, we conclude that the interests of justice will be best served by vacating the judgment of the district court and remanding the cause for such proceedings as may be appropriate in the light of this opinion. Vacated and remanded.

---

prices as defined by section 1301(a) (1) of this title.

\* \* \* \* \*

"(3) Through the exercise of the powers conferred upon the Secretary of Agriculture under this chapter, to establish and maintain such minimum standards of quality and maturity and such grading and inspection requirements for agricultural commodities enumerated in section 608c(2) of this title, other than milk and its products, in interstate commerce as will effectuate such orderly marketing of such agricultural commodities as will be in the public interest.

"(4) Through the exercise of the powers conferred upon the Secretary of Agriculture under this chapter, to establish and maintain such orderly marketing conditions for any agricultural commodity enumerated in section 608c(2) of this title as will provide, in the interests of producers and consumers, an orderly flow of the supply thereof to market throughout its normal marketing season to avoid unreasonable fluctuations in supplies and prices." 7 U.S. C.A. § 602 (1964).