Charlene **TALBOT** et al., Plaintiffs,

v.

George **ROMNEY**, Secretary, Department of Housing and Urban Development, et al., Defendants.

No. 70 Civ. 2402.

United States District Court,
S. D. New York.

Feb. 8, 1971.

MFY Legal Services, Inc., by Jeffrey G. Stark, New York City, for plaintiff Delores Jackson.

J. Lee Rankin, Corp. Counsel, City of N. Y., by George Newman, Asst. Corp. Counsel, New York City, for defendants [Walsh, and City of New York].

MOTLEY, District Judge.

This is a motion for summary judgment brought by plaintiff, Delores Jackson, to require defendants, Albert Walsh, Administrator of New York City Housing and Development Administration, and the City of New York, to house plaintiff and her two children in one of the unoccupied apartments at 360 Greenwich Street, New York City, at a reasonable rent until such time as the other tenants presently residing therein are required by order of the court to vacate the premises [the court order and its terms are discussed, *infra*]. The building in question is one which has been scheduled for demolition as part of the Washington Square Urban Renewal Project.

The motion for summary judgment seeks to resolve one issue of law. That is, to use plaintiff's words: ". . . whether a city which has taken possession of habitable dwellings pursuant to an urban renewal plan, and by means of federal funding, is required by federal law to rent all available apartments in said dwellings to homeless or otehwise needy persons." (Plaintiff's Statement of Uncontested Facts, at 1).[1]

Defendants have cross-moved to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Jurisdiction is based on 28 U.S.C. §§ 1331, 1361, 2201, and 2202.

## I. BACKGROUND AND FACTS

Plaintiff and her two children, public assistance recipients, were evicted from the Holland Hotel, euphemistically known as a "Welfare Hotel", on February 24, 1970, due to the now acknowledgedly unjustified termination of their public assistance benefits. Since that date, plaintiff claims that she has been unable to locate suitable housing de-

spite diligent efforts to do so. She has, therefore, been forced to move in with various relatives, sometimes, of necessity being separated from her children, and depriving them of needed parental guidance.

The premises at 360 Greenwich Street to which plaintiff seeks access is part of an urban renewal project which came into being over eight years ago. The property was condemned and title vested in the City of New York as long ago as 1965. Most of the former tenants have now been relocated. However, declarations of readiness to begin redevelopment which the City of New York has made and was making as early as 1968, notwithstanding, there has been little to date done toward implementation of the project plan. [For a full review of the project's history, *see* Talbot v. Romney, 321 F.Supp. 458 (S.D.N.Y., 1970)]. The upshot of all of this is that 360 Greenwich Street, a building containing residences which, with some repair could be rendered habitable, has stood vacant for several years and so stands presently, while needy persons, such as plaintiff, go without adequate shelter.

Plaintiff Jackson is but one of four others here joined in an effort to obtain and to maintain residence at the aforesaid address. The other plaintiffs were already tenants on the site at the time the project began. The on-site tenants obtained the relief they sought in August, 1970, when Lasker, J., in response to their motion for summary judgment granted a preliminary injunction against defendants' demolition of the 360 Greenwich Street property and prohibited the eviction of the on-site tenants until such time as

"projects planned for the renewal site encompassing said premises have been authorized by all appropriate governmental bodies and until such time as

1. The "uncontested facts", as they emerge from other documents indicate that both sides concede the apartments at 360 Greenwich Street to be presently unin-

habitable. It is for this reason that plaintiff also seeks to have the City required to make "minor" repairs on the premises before assuming occupancy.

sponsors for said projects have adequately demonstrated their readiness, ability and willingness to proceed forthwith with the development of the renewal site." Talbot v. Romney, *supra* at 471 (Order filed September 10, 1970).

Judge Lasker in granting the injunction recognized the defendants' obligation to provide on-site tenants with decent, safe and sanitary relocation housing, and found that defendants had not fulfilled that obligation with respect to those tenants. (All were artists with special space needs for their work and minimal funds to expend therefor). Judge Lasker found that the relocation requirements of the National Housing Act, 42 U.S.C. § 1441 et seq. were "designed to guarantee 'that, in clearing slum areas, government would not be driving into still worse conditions the people who lived in those areas.' [citation omitted]." *Id.* at 470. The premature forced moving of on-site tenants into areas ill-suited for the pursuit of their occupations, absent a showing of present readiness to construct would violate the National Housing Act requirements and policy, Judge Lasker found.

In passing upon defendants' challenge to the standing of the on-site plaintiffs to raise such a claim, the court relied upon the Second Circuit opinion in Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968) in which it was said,

"Since the section [42 U.S.C. § 1455c] requires provision for the relocation of displaced families, it can hardly be thought that displaced families such as plaintiffs, do not have the required personal stake in the outcome of litigation where a violation of the section is claimed." *Id.* at 932.

Judge Lasker concluded that the interest of displacees in adequate relocation were among those interests which the National Housing Act was passed in part to protect, and that as such, displacees had standing to sue when the Act's implementation fell short of its espoused goal.

## II. THE INSTANT MOTIONS

The court considers first defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Defendants contend that plaintiff's complaint is legally insufficient in that neither the complaint nor moving papers have demonstrated any federal law requiring defendants to rent apartments in buildings condemned for urban renewal to off-site persons. In essence, defendants challenge plaintiff's standing to sue and dispute that she has any legally protected right, the violation of which is reviewable. As the basis for her action, plaintiff relies upon the Congressional declaration of policy, 42 U.S.C. § 1441, in the National Housing Act which states that

" * * * the general welfare and security of the Nation and the health and living standards of its people require housing production and related community development sufficient to remedy the serious housing shortage, the elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, and the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family * * *."

Plaintiff says that if the purpose of the National Housing Act is to increase rather than decrease the store of available housing, then any action taken by a city which unnecessarily decreases presently available housing is a violation of that purpose. Leaving buildings fit for occupancy vacant for lengthy periods prior to demolition or demolishing them long before construction of new dwellings may begin is an unnecessary temporary decrease in housing in violation of the policy of the statute in plaintiff's view. Surely, the reasoning goes, one in dire need of housing and unable to obtain it, as plaintiff is, must have a right to complain since that person is injured by such an action.

The court cannot disagree with plaintiff that the City of New York is in the midst of a housing shortage crisis. But even assuming plaintiff's need for housing, the fact that plaintiff may, in a real way be injured in the sense that she needs shelter, here is shelter, and she can't get in, *ergo* injury, does not mean that plaintiff has either standing to sue or a legally cognizable interest.

Preliminary to discussing these issues the court notes that the failure to view issues of standing as separable from the existence of legally cognizable interests has for years occasioned much confusion in legal opinions. In an effort to clarify the content of each concept, the Supreme Court has handed down Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) and, only recently, the companion cases, Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). This court thus considers these concepts in a new light.

### A. *Standing to Sue.*

■ For purposes of ascertaining whether plaintiff has standing to sue, it is necessary to carefully consider each of three areas:

(1) whether plaintiff has a personal stake and interest in the proceeding sufficient to impart the "concrete adverseness" required by Article III;

(2) whether plaintiff is arguably within the zone of interests protected by the [National Housing]; Act; and

(3) whether judicial review of the challenged action or inaction has been precluded.

Barlow v. Collins, *supra.*

■ Addressing attention serially to these considerations, the court begins with Flast v. Cohen, *supra,* in which much of the history of Article III was set out. There, the Supreme Court said that Article III, which restricts judicial power to "cases" and "controversies", seeks to insure that the federal courts act only in an "adversary" context and in a form historically viewed as capable of judicial resolution. With this bit of background in mind, it is certain that plaintiff's claim satisfies Article III. The personal stake or interest which the plaintiff need show is not required to be a strict "legal interest" in the traditional sense. It will suffice for purposes of Article III that plaintiff alleges that "the challenged action has caused * * [her] injury in fact, economic or otherwise." Association of Data Processing Service Organizations v. Camp, *supra* 397 U.S. at 152, 90 S.Ct. at 829, 25 L.Ed. 2d at 188; Barlow v. Collins, *supra,* 397 U.S. at 164, 90 S.Ct. at 836, 25 L.Ed.2d at 203 n. 6; Harry H. Price & Sons, Inc. v. Hardin, 425 F.2d 1137 (5th Cir. 1970); *See* Application of Caldwell, 311 F.Supp. 358, 359 (N.D.Cal.1970). Here the purpose of the National Housing Act is to provide the citizenry with "safe, clean, and decent" housing. By not allowing plaintiff to reside in a building in its possession and in which others have been allowed to reside, the City has apparently denied plaintiff shelter, a fundamental need, to her detriment. A case or controversy is presented and the parties are definitely adversary.

■ With regard to consideration (2), it seems to the court that plaintiff's claim is arguably within the purview of those interests the statute was designed to protect. For this purpose, the Act, itself, need not refer specifically to the rights of off-site tenants, as its whole thrust is to insure "the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family." 42 U.S.C. § 1441. *Cf.* Scenic Hudson Preservation Conference v. F. P. C., 354 F.2d 608 (2d Cir. 1965), cert. denied, Consolidated Edison Co. of New York v. Scenic Hudson Preservation Conference, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966); Shannon v. United States Dept. of Housing & Urban Development, 305 F.Supp.

205, 211 (E.D.Pa.1969). It is true that the on-site tenant's relocation problems are specifically protected. Such protection was prompted by Congressional recognition that the larger resources of an agency administering renewal projects may be vitally necessary if substitute housing is to be located and the inconvenience and suffering forced moves may occasion to displacees is to be alleviated. But even though off-site tenants are not specifically referred to, plaintiff's argument that the Congress which passed the Act, so concerned with bettering the lot of the slum dweller, did not intend its grant of authority and funds to be instrumental in contracting unnecessarily the available supply of housing, is not without force. Congress may arguably have had the interests of off-site tenants in contemplation without specifically so stating, and that is enough for our purposes here.

■ Before discussing the third consideration outlined above, the court notes that "[w]here statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action." Association of Data Processing Service Organizations v. Camp, *supra* 397 U.S. at 154, 90 S.Ct. at 830, 25 L.Ed.2d at 189. Nevertheless, the instant claim presents the very type of controversy with which the federal courts are wont to become involved. Urban Renewal Projects have been reviewed by the federal courts only infrequently in recognition of the complexities and conflicting policy and factual elements which must be combined in developing such programs. *See* Norwalk CORE v. Norwalk Redevelopment Agency, *supra*, 395 F.2d at 929. The court finds, however, nothing in the Act which precludes judicial review of the administrative determinations challenged here. Review should not be " 'cut off unless there is persuasive reason to believe that such was the purpose of Congress.' " Barlow v. Collins, *supra*, 397 U.S. at 166, 90 S.Ct. at 838, 25 L.Ed.2d at 199. Adhering to Barlow v. Collins, *supra*, the

court infers from the Congressional intent to protect the interests of persons like plaintiff, a right to judicial review.

### B. *Legal Interest of Plaintiff*

■ The court has determined, nevertheless, to grant defendants' motion to dismiss as the court finds that while plaintiff has standing to sue, she has not demonstrated a legal interest which is protected against violations of the sort alleged here.

For those accustomed to viewing questions of standing in terms of the existence or non-existence of a legally protected right, this result may seem contradictory. In the court's view, however, it is not.

■ Standing relates only to the issue of the appropriateness of conferring the power to sue upon a person in the interest of preserving adverseness in the judicial process and in insuring a general logical nexus between the type of claim asserted and the party raising it. Flast v. Cohen, *supra*. Once it is determined that those goals have been respected, the court goes on to examine whether the particular plaintiff has a specific legal right, an interest more closely related to the Act or action being challenged which he or she reasonably should be permitted to vindicate. For this purpose, the court considers the implications of allowing suits of the type raised, the amenability of such claims to judicial disposition, and, most importantly, what rights Congress determined to vest in the party suing. *See*, Norwalk CORE v. Norwalk Redevelopment Agency, *supra*, 395 F.2d at 933.

With this in mind, it is crystal clear that plaintiff has no legally protectable "right to housing" in buildings condemned for urban renewal under the National Housing Act. There is no provision in the Act which protects either directly or indirectly the interests of off-site persons. There is no definition of specific duties owed to them. Nor is a duty to house off-site persons in con-

demned buildings inferrable from any provision of the Act or its stated purpose.

 The effects of allowing off-site tenants to move *en masse* into buildings scheduled for urban renewal would be to occasion chaos. For who would determine eligibility for such housing? Who would determine which buildings were habitable? Indeed, the latter question is crucial in the instant case. Plaintiff seeks admission to apartments which are conceded to be presently uninhabitable. She argues that defendants have the duty to make "minor" repairs to render the premises fit for occupancy. But to so require defendants would be to force defendants to make habitable buildings from which the former and remaining tenants would have been removed because of the very uninhabitability of those buildings. No one has a legal right to be housed in uninhabitable buildings. The granting of such a right would be the antithesis of the goal of the National Housing Act.

The fact that defendants have allowed some persons to remain illegally in buildings condemned for urban renewal does not vest a similar right for admission in others. The circular by the Deputy Administrator, Department of Relocation and Management Services, dated June 9, 1970, in which the defendant City seemingly condoned the seizing of other condemned buildings for residences by off-site tenants, does not have the force of law. The City specifically has stated an intention to evict those off-site tenants in the future.

In sum, the failure of Congress to in any way indicate an interest in vesting housing "rights" in condemned buildings in persons such as plaintiff, persuades the court that plaintiff has no legal right to the relief she seeks. The delay and difficulty judicial review of such claims would occasion furnishes yet another persuasive reason to so decline. Plaintiff has failed to state a claim upon which relief may be granted.

So ordered.